IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATRICK S. MULLIGAN,

                    Plaintiff,                  OPINION AND ORDER

    v.

                                                08-cv-364-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of a partially adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Patrick S. Mulligan seeks reversal of the commissioner's determination that he was not disabled after August 11, 2006 and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A) after that date. Plaintiff contends that the administrative law judge improperly rejected the opinions of his treating physicians and made a faulty credibility determination, resulting in erroneous findings at steps four and five. I find that the administrative law judge properly weighed the treating physicians' opinions, correctly assessed plaintiff's credibility and did not err in making his residual functional capacity assessment or posing a hypothetical question to the vocational expert. For these

1

reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on February 13, 1964.  He has a limited education and had past relevant work experience as a truck driver.  AR 28.  Plaintiff applied for disability insurance benefits and supplemental security income on March 10, 2005, alleging that he has been disabled since February 5, 2005 because of lung cancer in his right lung.  AR 22, 130.

After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on November 16, 2005 before Administrative Law Judge Roger W. Thomas in Duluth, Minnesota.  The administrative law judge heard testimony from plaintiff, AR 368-87, from a neutral medical expert, AR 387-93, and from a neutral vocational expert,  AR 393-97.  On December 1, 2005, the administrative law judge issued a written decision, finding plaintiff not disabled.  AR 39-47.  On April 21, 2006, the Appeals Council remanded the case to the administrative law judge to make a specific finding regarding plaintiff's credibility.

2

On August 22, 2006, a second hearing was held before Administrative Law Judge Thomas in Eau Claire, Wisconsin.  He heard testimony from plaintiff, a neutral medical expert and a neutral vocational expert.  (The transcript of this hearing is not included in the record.)  On December 1, 2006, the administrative law judge issued his decision, finding that plaintiff was disabled from February 5, 2005 until August 11, 2006 but not thereafter.  This decision became the final decision of the commissioner on April 30, 2008, when the Appeals Council denied plaintiff's request for review.  AR 10-12.  Plaintiff challenges the unfavorable portion of the decision.

B. <u>Medical Evidence</u>

1. <u>Treatment before August 2006</u>

Plaintiff was given a diagnosis of undifferentiated adenocarcinoma of the right lung, for which Dr. D. G. Cavanaugh performed a right lobectomy in February 2005.  AR 188.  In March 2005, Dr. Bilal Navqi started plaintiff on chemotherapy.  AR 228, 337.  On April 13, 2005, Navqi wrote a letter stating that plaintiff would not be able to work until at least the beginning of July.  In his letter he stated that plaintiff was undergoing chemotherapy, had had severe side effects and had been admitted to the hospital.  AR 337.

On April 27, 2005, plaintiff saw Dr. Thomas Lundquist, his treating physician, and reported severe pain in his lower extremities and shortness of breath.  Lundquist diagnosed

bronchitis and severe lower extremity pain not controlled by his medications.  He prescribed MS Contin and noted that the chemotherapy-related pain should improve.  AR 255.

A May 12, 2005 chest x-ray showed that plaintiff had a broken rib from the surgery. AR 298.  Navqi noted that plaintiff had complained of some numbness in his feet, which had resolved.  After noting that Lundquist had prescribed MS Contin for plaintiff, Navqi gave plaintiff a prescription for 30 Percocet tablets.  AR 299.  On May 27, 2005, plaintiff saw Lundquist concerning his pain medications.  Lundquist noted that plaintiff was not taking any morphine sulfate for breakthrough pain and took only Percocet.  Because plaintiff believed the MS Contin had no significant effect, Lundquist reduced his prescription.  AR 254.

On June 2, 2005, plaintiff saw Dr. Muhammad Muslim and reported peripheral neuropathy in the heels of both feet that intermittently affected his walking.  He also reported burning sensations in his legs.  After completing his chemotherapy, plaintiff saw Cavanaugh for a follow-up visit on July 5, 2005.  His lungs were clear, his chest x-ray looked good and his oxygen saturation was 95 percent during a brisk walk.  AR 338-40.

On July 14, 2005, plaintiff saw Navqi, complaining of some residual neuropathy and pain at the site of his surgical incision.  AR 285.  A computed tomography scan showed no recurrence of cancer.  Although plaintiff asked Navqi for a Percocet prescription, Navqi did

4

not provide it because plaintiff had received 50 Percocet tablets in the emergency room two

days before.  AR 286.

On July 25, 2005, Cavanaugh saw plaintiff and reported the following:

> Unfortunately his forced vital capacity is 2.13 liters, which is
> only 43% of predicted.  It did not improve with bronchodilators.
> He also has an FEV1 that is 1.98 liters, which is 51% of
> predicted, this being improved after a 45% 1.76 liter test prior
> to bronchodilators.  The patient becomes very short of breath
> just walking up the stairs and walking outside.  The patient is
> asking questions about going back to work. He is a truck driver,
> and I do not think he is qualified to drive a truck.  He also has
> some problems with his memory since he has had
> chemotherapy.

AR 342.  He further stated that in his surgical opinion, plaintiff was disabled.  AR 342.

Three days later, on July 28, 2005, plaintiff saw Dr. Eric N. Carlsen, a physical

medicine and rehabilitation specialist.  On examination, Carlsen found that plaintiff had a

little bit of "stocking distribution" (that is, in the area of leg that a stocking would cover)

sensory loss in his feet but that his gait was relatively normal.   Plaintiff's reflexes were

reduced in his lower limbs but symmetric.  Carlsen indicated that plaintiff had some mild

peripheral neuropathy and some occasional difficulty remembering names and dates.  AR

360.  Although Carlsen believed that it would be fairly unlikely that plaintiff could be

employed because of his chronic narcotic use, severe shortness of breath with exertion and

some peripheral neuropathy, he concluded that plaintiff's functional capacity was most likely in the sedentary to light range with allowances for a change in position.  AR 361.

On August 2, 2005, plaintiff saw neurologist Dr. Roland More.  Plaintiff reported that after his last round of chemotherapy in April 2005, he noticed numbness, tingling and burning pain in both lower extremities.  He also reported pain and sensitivity on the right side of his chest near his surgical incision.  Plaintiff was taking eight Percocet tablets a day for pain.  He also complained of short term memory loss.  On examination, More noted that plaintiff was alert and his mental status was normal.  A sensory exam revealed reduced pinprick, light touch and temperature in a stocking distribution up to the knees.  More diagnosed plaintiff with painful sensory peripheral neuropathy secondary to chemotherapy and mild short term memory loss.  More noted that plaintiff's short term memory loss was not very severe and that he expected plaintiff's neuropathy to gradually improve.  He prescribed Amitriptyline for plaintiff's neuropathic pain.  AR 347-48.

On August 4, 2005, state agency psychologist Keith Bauer completed a Psychiatric Review Technique Form for plaintiff, finding that he had no severe mental impairments.  AR 323-36.  He found that plaintiff had no difficulties in the activities of daily living or in maintaining social functioning and had no episodes of decompensation.  Bauer found that plaintiff had mild difficulties in maintaining concentration, persistence or pace.  AR 333.

On August 24, 2005, plaintiff returned to Cavanaugh.  His oxygen levels were 97 percent.  Cavanaugh noted that plaintiff had sinus tachycardia but no symptoms from it.  Cavanaugh also noted that although plaintiff's lung function was poor, he was doing fairly well.  AR 349.  A month later, Lundquist wrote a letter stating that plaintiff was unable to work because he had had surgery and chemotherapy for lung cancer.  AR 362.

2. Physician opinions after August 2006

On August 11, 2006, Cavanaugh wrote a letter to plaintiff's attorney in which he stated that plaintiff was recovering slowly from his surgery but had developed peripheral neuropathy from chemotherapy.  Cavanaugh noted that plaintiff was being followed by his primary physician because of chronic depression.  Plaintiff's oxygen saturations were 96 or 97 percent at rest but with exercise, they dropped into the low 90s.  They recovered to normal after two minutes of rest.  Cavanaugh was of the opinion that plaintiff had been disabled since his February 2005 surgery and that although his pulmonary status continued to improve, he became short of breath with exercise.  AR 364-65.  Cavanaugh wrote as follows:

> It would be my opinion that, as of this time, Mr. Mulligan is not able to maintain a full work load as he had prior to his surgery, and that if he was considered for some type of employment, this would certainly have to be the type of work that would be modified to meet his needs from his residual pulmonary status secondary to his lobectomy.

7

AR 365.

On September 13, 2006, Lundquist responded to a letter from plaintiff's lawyer.  He stated that the following information contained in his report of January 2, 2006 was still relevant:

- Plaintiff's chemotherapy caused neuropathy in his legs for which he took narcotic pain medication.

- Because plaintiff's medication causes him excessive daytime fatigue, he frequently has to lie down during the day.

- It is uncertain whether plaintiff could reduce his narcotic medications or be treated with different pain relieving medications or modalities in the future.

AR 363.  In the September letter, Lundquist reiterated that plaintiff continued to have significant fatigue and is unable to work for long periods without lying down during the day. He noted that although plaintiff was still taking narcotic pain medication for his neuropathy, he was beginning Cymbalta.  Lundquist stated that tests showed that plaintiff did not have a severe low oxygen level or a chronic impairment of gas exchange.  He noted that plaintiff got "somewhat short of breath with exertion."  AR 366.

## C.  Hearing Testimony

At the first hearing on November 16, 2005, plaintiff testified that he did not graduate from high school but went to Boise State University to learn how to drive a truck.  He

8

testified that he was no longer able to drive a truck but did drive a car for his personal use. AR 373.  Plaintiff testified that he took care of himself and his four-year old daughter but did not do housework.  AR 378, 380.  He stated that he had to lie down during the day because of fatigue and that he had short term memory loss.  AR 383-84.  Plaintiff also stated that he has numbness and pain in his legs caused by chemotherapy, as well as pain in his right rib.  AR 375-76.

Plaintiff explained that because of his shortness of breath and leg problems, he could walk only a quarter to a half of a mile.  AR 376.  He testified that he used Albuterol three or four times a week for his breathing problems, had a pain patch and was taking Amitriptyline, Percocet, Prilosec and a medication to calm him.  He stated that he took six to eight Percocet tablets a day for his leg pain and right rib pain.  Plaintiff admitted that his condition was stable but explained that he had numbness in his hands when he reaches above his head.  AR 376-79, 385-87.

Although the transcript of the second hearing is not a part of the record, neither party objected to the administrative law judge's summary of the testimony at the hearing in his December 1, 2006 decision.  Therefore, I draw the following facts from that summary.

On August 22, 2006, plaintiff testified that he was still unable to work because of constant pain in his lower extremities.  He stated that he could not sit or stand for more than an hour or walk more than three blocks at a time.  He also testified that because he had

9

trouble sleeping and experienced side effects from his medications, he had to lie down one or two times a day for one or two hours at a time.  Plaintiff testified that he was on Prozac and used an Albuterol inhaler five to six times a week but took no other pulmonary medications.  Plaintiff's friend Jennifer Fulton testified that plaintiff had appeared short of breath and tired when she had seen him.  AR 30.

At the hearing, Dr. Katherine Hiduchenko, a neutral medical expert, testified that from February 5, 2005 to August 11, 2006, the date of Cavanaugh's last letter, plaintiff would have been unable to perform any work because of his surgery, post surgical and chemotherapy related complications and prolonged recovery period.  AR 28.  Hiduchenko testified that after that period, plaintiff likely would have experienced fatigue as a result of his impairments and treatment, but would not have had a medical requirement to lie down during the work day.  She testified that as of August 2006, plaintiff would have been able to perform sedentary to light level work limited to no work around heights, exposure to extreme temperatures or operation of foot controls.  AR 31.

Paul D. Malucci, a neutral vocational expert, testified that, as of August 2006, an individual of plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations, namely inspector (5,000 jobs).  He stated that his testimony was consistent with the information in the Dictionary of Occupational Titles.  AR 32.

10

D. <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled as of August 12, 2006, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  At step one, he found that plaintiff had not engaged in substantial gainful activity since February 5, 2005, his alleged onset date.  AR 18.  At step two, he found that a plaintiff had severe impairments of a history of undifferentiated adenocarcinoma of the right lung, status post right upper lobectomy and residual moderate obstructive pulmonary disease and sensory peripheral neuropathy in the lower extremities caused by his chemotherapy.  The administrative law judge did not find that plaintiff had any severe mental impairment.  At step three, the administrative law judge found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 26-7.

The administrative law judge found that from February 5, 2005 to August 11, 2006, plaintiff lacked the residual functional capacity to perform even sedentary level work on a regular and continuing basis.  Because plaintiff could not perform his past work as a truck driver or any other job existing in significant numbers in the national economy, the administrative law judge found that plaintiff was disabled from February 5, 2005 to August 11, 2006.  However, he determined that plaintiff's condition improved after August 11, 2006.  AR 27-9.

11

The administrative law judge found that beginning on September 1, 2006, plaintiff had the residual functional capacity to perform sedentary to light level work limited to no work around unprotected heights, no operation of foot controls, no exposure to extreme temperatures, no high production quotas and no excessive exposure to dust, fumes, gases or smoke.  He noted that although plaintiff's impairments could reasonably be expected to produce symptoms, his subjective complaints concerning the severity of his symptoms and limitations as of September 1, 2006 were not entirely credible.  AR 29-30.  Relying on Malucci's testimony, the administrative law judge found that an individual of plaintiff's age, education, work experience and residual functional capacity as of August 12, 2006 could perform the requirements of representative occupations, namely inspector.  He also determined that Malucci's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Accordingly, the administrative law judge found that plaintiff was not disabled as of August 12, 2006.  AR 32-33.


OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such

12

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Credibility

Plaintiff challenges the administrative law judge's determination that his statements concerning the intensity, persistence and limiting effects of his symptoms as of September 1, 2006 were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his

or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702.  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding his symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. § 404.1529(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

14

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff asserts that the administrative law judge relied solely on the medical expert's testimony in finding him not credible.  He generally argues that the opinions of his treating physicians, the fact that he has sensory peripheral neuropathy and the amount of pain and anti-inflammatory medication that he takes all corroborate his subjective complaints of pain.

Contrary to plaintiff's assertions, the administrative law judge properly considered the objective medical evidence and the other relevant factors listed in the regulation in making his credibility determination.  He noted that after plaintiff completed chemotherapy in June 2005, he had no recurrence of cancer.  The administrative law judge found that although

15

plaintiff later complained about shortness of breath, pulmonary function studies performed in July 2005 showed that he had only a moderate obstructive pulmonary defect with significant response to bronchodilator treatment. Plaintiff's oxygen saturation levels while at rest had been 97 to 98 percent since March 2005. Although plaintiff experienced a slight decrease in these levels with exercise, he recovered after two minutes of rest. The administrative law judge also noted that August 11, 2006 treatment notes indicated that plaintiff's pulmonary status continued to improve and that he would be able to perform work modified to meet his pulmonary needs.

The administrative law judge noted that in July and August 2005, both More and Lundquist stated that they expected plaintiff's peripheral neuropathy to improve because it was related to his chemotherapy treatment. In fact, Carlsen reported in July 2005 that plaintiff would be able to perform sedentary to light level work. The administrative law judge pointed out that the record contained no subsequent treatment or testing records. Lundquist and Cavanaugh submitted only letters describing their encounters with plaintiff and his self-reports.

The administrative law judge considered the amount and side effects of plaintiff's medications. He noted that Lundquist stated in January and September 2006 that plaintiff was on narcotics for constant neuropathic pain and reported the side effect of excessive daytime fatigue, which caused him to lie down during the day. However, he did not find

16

plaintiff's complaints credible because there were no references to chronic fatigue in the medical treatment notes. The administrative law judge further noted that neither Lundquist nor Cavanaugh recommended that plaintiff lie down for medical reasons.

The administrative law judge also noted that the record suggested considerable narcotic-seeking behavior by plaintiff. For example, plaintiff had requested Percocet from multiple providers for multiple sites of pain. The administrative law judge also noted that plaintiff did not follow up on any alternative pain relief methods that were suggested, such as the direct pain block recommended by Lundquist. Although Lundquist noted in January 2006 the possibility of treating plaintiff with different medications or modalities, nothing in the record shows that he ever referred plaintiff to a pain specialist or recommended a pain management program. In fact, there are no treatment notes in the record after August 2005. Given this evidence, the administrative law judge reasonably could conclude that plaintiff's testimony concerning disabling pain and fatigue was not entirely credible.

In sum, the administrative law judge considered all of the evidence of record. Although he may not have applied every factor listed in the regulation, he gave specific reasons for his determination that are supported by the record. There is an accurate and logical bridge from the evidence to his conclusion that plaintiff's testimony concerning his symptoms was not entirely credible. Therefore, plaintiff has not demonstrated that this is

17

one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

## C.  Treating Physicians' Opinions

Plaintiff generally asserts that the administrative law judge erred in adopting the opinion of Hiduchenko, the medical expert, over the opinions of his treating physicians.  The only specific evidence that plaintiff contends that the administrative law judge improperly rejected is Cavanaugh's August 11, 2006 opinion that he had chronic depression and Lundquist's statement that the medications caused him excessive fatigue.  Otherwise, plaintiff refers generally to his numerous pain medications and "evidence of disabling pain." Dkt. #6.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence

18

for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 404.1527(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

Plaintiff correctly asserts that by itself a contradictory opinion of a non-examining physician is not sufficient to provide the evidence necessary to reject a treating physician's opinion.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  By rejecting a treating physician's opinion only on the basis of a non-examining physician, the administrative law judge is effectively substituting his judgment for that of the treating physician, something he cannot do.  However, the administrative law judge considered the opinions of plaintiff's treating physicians and provided good reasons for not giving them controlling weight.  Further, other medical evidence in the record supports Hiduchenko's opinion that plaintiff was not disabled by either depression or chronic fatigue.

The administrative law judge found that the evidence of record did not support greater limitations than those assessed by Hiduchenko at the hearing.  He noted that

19

Hiduchenko's opinion was consistent with the opinions of Carlsen, who stated in July 2005 that plaintiff could perform sedentary work, and Cavanaugh, who stated in August 2006 that plaintiff was able to perform modified work consistent with his residual pulmonary impairment.  Except for Lundquist's reference to lying down, no physician assessed plaintiff as having specific limitations or stated that he was unable to perform any work.

With respect to Lundquist's opinion that plaintiff had to lie down because of chronic fatigue, the administrative law judge stated that there was no medical evidence that plaintiff suffered from severe fatigue.  Although Hiduchenko testified that plaintiff likely would have experienced fatigue as a result of his impairments and treatment, there was no medical requirement that he had to lie down.  The administrative law judge gave great weight to this testimony because he found it to be supported by the record as a whole.  Noting that Cavanaugh, Carlsen and More did not mention plaintiff's fatigue, he concluded that Lundquist's opinion was based solely on plaintiff's subjective complaints and not consistent with the medical evidence.  This finding is well founded.

Apart from his own allegations, plaintiff does not cite any other evidence supporting Lundquist's opinion.  It is well settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon

plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); <u>Mastro v. Apfel</u>, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).  Because I found that the administrative law judge properly discounted plaintiff's subjective statements as not credible, it follows that he could reject any opinions that were based on those statements.

The administrative law judge was not persuaded by Cavanaugh's singular reference to chronic depression because plaintiff was never treated for it.  Although plaintiff was taking Amitriptyline and Cymbalta, his physicians prescribed these medications for pain and not depression.  The administrative law judge found no evaluation or treatment by any mental health provider in plaintiff's medical record and plaintiff has not referred to any.   In addition, he noted that plaintiff did not report any symptoms of depression that would interfere with his ability to work.  These findings are well founded and are further supported by the August 2005 opinion of the state agency consulting physician.  Accordingly, the

administrative law judge provided good reasons for rejecting Cavanaugh's opinion that plaintiff had chronic depression.

In sum, substantial evidence in the record supports the opinion of the medical expert. Hofslien v. Barnhart, 439 F. 3d 375, 377 (7th Cir. 2006) (administrative law judge determines how much weight to give various medical opinions and court will uphold that decision as long as it is supported by substantial evidence).  Accordingly, I do not find that the administrative law judge erred in discounting the opinions of Lundquist and Cavanaugh.

D.  Steps Four and Five

Plaintiff argues that the administrative law judge did not properly consider his disabling pain, depression or need to lie down an hour a day in making his residual functional capacity assessment or posing hypothetical questions to the vocational expert. However, as discussed above, plaintiff's testimony concerning disabling pain was not credible and there is no evidence in the record that he was severely impaired by chronic depression. I also determined that the administrative law judge properly concluded that plaintiff did not have chronic fatigue that required him to lie down during the day.

Plaintiff suggests that the administrative law judge should have supplemented the record concerning plaintiff's depression and disabling pain.  When, as here, a plaintiff is represented by an attorney, the administrative law judge is entitled to assume that the

22

attorney will make a request for a consultative expert if he or she deems it important.  Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (administrative law judge can assume that applicant represented by counsel is "making his strongest case for benefits").  Further, the administrative law judge must consult a medical expert only if he concludes that the evidence before him is insufficient to make a determination.  20 C.F.R. §§ 404.1527(f)(2)(iii); 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  Given that there was sufficient evidence in the record from which the administrative law judge could determine plaintiff's residual functional capacity, it was unnecessary for him to order a consultative examination.

Because the administrative law judge properly found no evidence that plaintiff suffered from disabling pain, fatigue or depression, he was not required to include any limitations related to these impairments in his residual functional capacity assessment or hypothetical to the expert.  He was entitled to rely on the testimony of the vocational expert that there were jobs in the national economy that a person with plaintiff's functional capacity could perform.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Patrick S. Mulligan's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 10th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

24